SHELDON, *Adm'r, versus* WHITE & al.

The allegations of a plaintiff in his writ, though he may have prosecuted it to final judgment in his favor, cannot operate as an estoppel against him, when the judgment is no muniment of title, and when the party insisting upon the estoppel was not a party to the judgment.

On REPORT from *Nisi Prius.*

REPLEVIN for a quantity of pine boards, sawed from logs cut on a tract of land in Canada, and hauled into Round pond, on the north branch of Dead river in this State.

One Larry obtained from the owners of the tract a permit to cut and haul the logs. One Atkinson testified that he saw Larry at the pond, where the logs were lying, and that Larry claimed them, and offered to sell them. Another witness testified, that in the spring of 1850, Larry employed and paid him for transporting to a house near the pond certain provisions, driving tools and log driving supplies, and also six men hired by Larry to drive the logs, and that Larry then said, that the supplies and men were for the purpose of driving the logs which were cut in Canada.

The logs were cut and hauled by Heald, Brown and Eldridge, and they claimed to own them. Larry, during the preceding season, had become accountable to one Mace for supplies then furnished to Heald and Eldridge. For those supplies, he subsequently paid Mace by property, sold to him by Heald and Eldridge, according to their bill of sale.

On Feb'y 16, 1850, Heald and Eldridge had received from these defendants some supplies for their logging operations, and were expecting to receive still more. To secure the defendants for what supplies had been and what should be furnished, they on that day mortgaged to them what logs they had then cut, and what they should subsequently cut that season.

This mortgage commenced with the words, — "Whereas White and Norris have furnished, the present winter, certain logging supplies to Abel W. Heald and William Brown and to said Heald and Jotham Eldridge, (said Eldridge being successor to said Brown,) &c. and was signed,

"Abel W. Heald for Heald and Brown,<br>
for Heald and Eldridge."

The boards replevied were sawed from the logs embraced in that mortgage. From a disclosure, made by one of the defendants, it appeared, that in March, 1850, prior to the 30th day of that month, Larry took from Heald and Eldridge a

Sheldon *v.* White.

bill of sale of the logs and of other articles of property. The defendants introduced the copy of a writ dated March 30, 1850, in their favor against Larry, charging him with having taken said bill of sale, on the 17th of that month, with a design to aid Heald and Eldridge to defraud their creditors, and alleging that Heald and Eldridge were the owners and in possession of, and had a valuable interest in, certain property, embracing the logs in controversy, and on that day transferred them to Larry.

To secure to these defendants the amount which they might recover in that suit, Larry made to them, April 6, 1850, a mortgage bill of sale of the logs.

The defendants put in a copy of the judgment in that action, showing that they recovered judgment therein, at Oct. term, 1850, for $1900,86, and costs. The plaintiffs however objected to that copy, and suggested and introduced evidence tending to show a diminution of the record.

On October 10, 1850, Larry made a bill of sale to Parker Sheldon of two marks of pine board logs, [2368 pieces] cut in the Province of Canada the then past winter and landed in the North branch of Dead river.

The boards replevied were sawed from the logs described in that bill of sale. Parker Sheldon afterwards conveyed the logs to Parker C. Sheldon, who died intestate, and this suit is brought by his administrator.

The cause was submitted to the Court, with authority to draw inferences as a jury might, and to enter judgment on nonsuit or default as the law may require.

*Evans* and *Webster*, for the plaintiff.

Both parties claim the property in question under Larry. The defendants are estopped to set up a title under Heald and Eldridge, by the allegations in their writ against Larry. They there set forth that on the 17th of March, 1850, Heald and Eldridge, "were the owners" in possession of, and had a valuable interest in, certain property, embracing the logs in controversy; and that, on that day, they transferred them to Larry. By those allegations the defendants are bound, and

cannot be permitted to set up any anterior title in themselves. Comyn's Dig. Estoppel, A. 1 and A. 2; Co. Lit. 352, a. and b.; 16 Mass. 65; 6 Pick. 341; 1 Metc. 180.

If the defendants recovered a judgment against Larry, as they assert, what does it prove, except that the logs were *really* and *absolutely* the property of Heald and Eldridge, and that they, being such owners, sold the same to Larry. How can they now deny these facts?

There can be no doubt that Larry, and those privy with him in estate, as were the defendants, would by his mortgage to them be estopped to deny his title to the logs. Estoppels must be mutual and bind both parties. Com. Dig. Estoppel, B.; Co. Lit. 352, a.

The defendants are therefore estopped, by taking that bill of sale, to deny the title of Larry to the logs at that time. *Haines* v. *Gardner*, 10 Maine, 383; *Kimball* v. *Kimball*, 2 Maine, 226; *Nason* v. *Allen*, 6 Maine, 243; *Hamlin* v. *Bank of Cumberland*, 19 Maine, 66.

The defendants being estopped by their writ; and the defendants and Larry being estopped by Larry's bill of sale, to deny Larry's title on the 30th day of March, 1850, privies of either party are estopped by, and may take advantage of, the same. Com. Dig. Estoppel, B. and D.; *Adams* v. *Barnes*, 17 Mass. 365.

The plaintiff, having purchased the property of Larry after the making of that bill of sale and date of defendant's writ, is bound by, and *entitled to the benefit of both* estoppels.

Is it answered that the writ, defendants v. Larry, alleges that Heald and Eldridge had a valuable interest in the property which may be consistent with the rights of defendants as mortgagees, it is replied that this allegation is but cumulative or additional to the positive allegation of their ownership and cannot diminish or take from that positive allegation. And further, nothing but that positive allegation of ownership, laid in the writ and proved, would entitle defendants to their verdict, and they are bound by those allega-

tions, which were necessary to be proved to entitle them to a verdict under R. S. c. 148, § 49.

Again, if defendants had a good and valid mortgage of the logs from Heald and Eldridge, who sold them afterwards to Larry, they have elected to sue Larry for the alleged fraudulent purchase, and have obtained a verdict against him. And having chosen to resort to the penalty and attempted to recover of Larry double their just dues, it is not in their power to turn round and attempt to follow the property itself into the hands of an innocent purchaser, who bought the property without knowing of their claim.

The logs were cut under a permit which belonged to Larry. The presumption of law is, that the logs were cut and hauled, without the violation of any person's rights. As there is no evidence that Larry ever transferred his permit, it results that in getting the logs, Heald and Eldridge were at work for him. This presumption is fortified by much of the evidence in the case, such as that he claimed them and offered to sell them on the bank in the spring; carried up supplies and men to drive them; and became accountable to Mace for further supplies.

The pretended mortgage, signed by Heald, was invalid, because: —

1. It undertook to convey property, to which neither he nor those for whom he assumed to act, had any title.

2. The logging operations were not closed until March 16th, 1850. So says the defendants' writ against Larry. Yet the mortgage, though made as early as February 16, conveyed not only the logs then cut, but what might afterwards be cut. *Winslow* v. *Merchants' Ins. Co.* 4 Metc. 306.

3. The property mortgaged was incapable of delivery. It had no existence as personal property, being then annexed to the freehold of another. *Butterfield* v. *Baker*, 5 Pick. 522; *Bailey* v. *Fillebrown*, 9 Maine, 21; *Sherburn* v. *Jones*, 20 Maine, 10.

4. The co-partnership was not a general one, but was for the sole business of getting lumber. Yet *one* of the partners,

by the mortgage, conveyed the whole property to secure a *single* creditor. This was beyond his authority. 5 Paige, 30; 1 Hoffm. 511; 5 B. & A.; 1 Car. & Marsh. 93.

5. The dissolution of the firm of Heald and Brown revoked all authority in either partner to dispose of the partnership property independent of the other, or even of one half, except for the purpose of winding up the partnership concerns, as each partner has a lien upon the whole until the partnership debts are paid, and then has a right to his share of the balance in severalty.

6. It was a mortgage of property, part of one firm and part of another, to secure debts for which each was separately liable, without distinguishing what amount of debt belonged to each, or what amount of property to each.

7. It is void as being a mortgage of the present and *future* assets of the partnership to secure the present and *future* liabilities. This cannot be within the scope of the partnership. One partner could not do this, even if he have authority to mortgage the whole existing assets to secure an existing liability of the firm.

8. The mortgage was of property, not within the jurisdiction or limits of this State, and cannot operate unless the steps required by the laws of Canada be pursued, and if the mortgage, as to that part of the property in this State, would be good, the mingling it afterwards with that not in the State, by consent of both parties, avoids the mortgage.

9. The mortgage from Larry to White and Norris was not given to secure any debt from him to them, as no debt was due them from Larry. They had brought an action founded in an alleged tort, under statute, c. 148, § 49, against Larry, and in that no debt existed until judgment rendered. *Meserve v. Dyer*, 4 Greenl. 52.

This conveyance, although a mortgage, being without consideration, may be avoided by subsequent purchasers. Roberts on Fraud. Con. 12, 19, 459; *Gorham* v. *Herrick*, 2 Greenl. 87; *Howe* v. *Ward*, 4 Greenl. 195; *Frost* v. *Goddard*, 25 Maine, 414.

If it is said that the mortgage is not void but voidable, and must be rescinded before it can be avoided, we say it has been rescinded by Larry in every way he could adopt for that purpose. Sheldon purchased of Larry Oct. 10, 1850, and the pretended judgment, *White and Norris* v. *Larry*, was not recovered till the Oct. term, 1851, more than a year after the purchase of plaintiff; he took it therefore free from incumbrance.

*J. S. Abbott*, for the defendants.

SHEPLEY, C. J. — To maintain this action there must be proof, that the intestate had acquired a general or special property in the goods replevied. The boards appear to have been sawed from logs cut on a tract of land in Canada by the written permission of Andrew T. Galt to J. W. Larry.

The intestate claimed to be the owner of those logs by a sale of them made by Larry to Parker Sheldon on October 10, 1850, and by Parker Sheldon to himself on June 6, 1851.

The defendants claim them by a mortgage bill of sale made in February, 1850, and recorded in the records of the town of Bingham, where the mortgagers resided, on Feb. 16, 1850. And also by another mortgage bill of sale of them made by Larry to them on April 6, 1850.

The fact, that the logs were cut under a permit granted to Larry, is not sufficient to prove that they were owned by him. It might, in the absence of other proof, raise a presumption, that they were cut by or for him and that he was therefore the owner. It appears, that they were cut and hauled by Abel W. Heald, William Brown and Jotham Eldridge. It does not appear what arrangement, if any, was made for the purpose between them and Larry. Nor does it appear, that they were cut and hauled by them for Larry, or that Larry ever became responsible to pay them any thing for their labor.

It does appear, that those, who cut and hauled them, claimed to be the owners of them, and that as such they assumed

to convey them to the defendants. It further appears from a disclosure made by one of the defendants, introduced as evidence by the plaintiff, that Larry took a bill of sale of them from Heald and Eldridge in the month of March, 1850. That after this, on March 30, a suit was commenced by the defendants against Larry, charging him with having taken, on March 17, a bill of sale of these logs, with other property, from Heald and Eldridge with a design to aid them to defraud their creditors. To secure the payment of the amount of the judgment, that might be rendered in that suit, Larry made the bill of sale of the logs to them of the sixth of April, 1850.

Larry during the preceding winter had agreed to be accountable to Benjamin B. Mace for supplies then furnished to Heald and Eldridge. These supplies appear to have been paid for by Larry by property purchased by him of them by their bill of sale to him before named.

Larry also appears by the testimony of Atkinson to have claimed to be the owner of the logs in March or April, 1850, and to have offered to sell them. It does not appear, that this was before he had taken a bill of sale of them from Heald and Eldridge. It appears, that Larry, in the spring of 1850, procured men and supplies to float the logs from the ponds, in which they had been before found, but this appears also to have been after he took that bill of sale.

The result of this testimony is, that those who cut and hauled the logs claimed to be the owners of them and as such undertook to sell them; that Larry took a bill of sale of them from them, thereby admitting their title; that his subsequent claims and acts of ownership were not inconsistent with his admission of their prior title; that there is no satisfactory proof, that he owned the logs, unless he acquired a title to them from Heald and Eldridge. That title he could not obtain, if their prior conveyance to the defendants was effectual.

To this objection is made, that it was not properly executed by Heald for himself and partners; that the firm of

Heald and Brown had been dissolved; and that Heald could not therefore convey their property. Brown does not appear to have claimed any interest in the logs after he retired, and was succeeded by Eldridge. The bill of sale states, that Eldridge was the successor to Brown. An inference may therefore be justly drawn, that he succeeded to all his partnership rights. If he did, Heald and Eldridge might lawfully convey the whole. If he did not, Brown would retain his interest, which would not be conveyed to Larry any more than to defendants, by a bill of sale made by Heald and Eldridge. Heald and Eldridge appear to have been partners in that business, and a conveyance by one of them would convey their partnership property.

Another objection to it is, that they undertook to convey logs to be subsequently cut and hauled. It does not appear, that all the logs subsequently cut were conveyed to Larry. His bill of sale was taken about one month only later, and it does not appear, that the boards replevied were sawed from logs cut after the mortgage was made to the defendants.

Other objections were made, which are not regarded as valid.

It is insisted, that the defendants are estopped by the allegations, made in their writ against Larry, that Heald and Eldridge were the owners of the logs when they made a conveyance of them to Larry. An allegation in a writ cannot operate as an estoppel, when the judgment recovered is no muniment of title, and the party insisting is no party to the judgment. *Parsons* v. *Copeland*, 33 Maine, 370.

No such proof of title in the intestate is presented as would authorize a judgment for the plaintiff.

*Plaintiff nonsuit and*
*judgment for a return.*

Howard, Wells, Rice and Hathaway, J. J., concurred.